# Harrisburg Savings and Loan Association *v.* United States Fidelity and Guaranty Company.

*Principal and surety—General manager of corporation—Province of court and jury.*

In an action on a bond of suretyship of a general manager of a corporation given to secure his honesty in the performance of his duties as general manager, it appeared that by the by-laws of the corporation the general manager should have supervision of the affairs of the association under the direction of the board of directors and should "perform such duties in the detail work of the association as shall be prescribed from time to time by the board of directors." The by-laws also provided as follows: "It shall be the duty of the treasurer to receive all moneys due the association, and to keep account of the same." The application for the bond

made to the surety company as general manager and approved by the president of the corporation stated that the position of the general manager was purely clerical, that itemized reports were made to the directors at each meeting of all cash received in the office, that moneys received in payment of dues were deposited in bank each day, that a complete system of credit slips was used, and that the books and vouchers were subject to the inspection of the directors at all times. The testimony showed that the general manager had charge of the books of the association, received the cash and deposited it in bank, that he produced at each meeting of the directors a statement which was accepted by the board, showing the amount of money received by him, and that it was in the treasurer's hands. *Held*, (1) that the testimony as to statements submitted to the board was properly admissible; (2) that the question as to whether the loss by the general manager's dishonesty was covered by the contract, was for the jury and not for the court; (3) that the evidence justified the finding of the jury that it was the duty of the general manager, as understood by both parties to the contract, to receive the money, which, by his fraud and dishonesty, the plaintiff lost; (4) that a verdict and judgment for plaintiff should be sustained.

*Principal and surety—Discharge—Imposition of new duties.*

If moneys embezzled by a principal in a bond of suretyship are received by him under his appointment and in pursuance of his duties, the faithful performance of which are secured by the bond, the mere fact of the imposition upon him of other and greater duties and responsibilities, in no way interfering with or modifying those imposed by the original appointment, will not discharge the surety.

Argued May 28, 1900. Appeal,. No. 1, May T., 1900, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1899, No. 446, on verdict for plaintiff in case of Harrisburg Savings and Loan Association v. United States Fidelity and Guaranty Company. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Assumpsit upon a bond of suretyship. Before SIMONTON, P. J.

The facts appear by the opinion of the Supreme Court.

C. C. Forney, a witness called by the plaintiff, being upon the stand:

Mr. Millar : " We desire to prove by this witness that E. A. Ferrin, as general manager of this association, had entire charge of the books of the association, and that he had entire charge of the entries in the books of the association, and that the en-

tries in the books were made under and by his direction, and that he had entire charge of all the cash received at the office of the association, whether by himself or by some other person in the office. That he received the cash and made all the deposits of cash, and had entire charge of the safe in which the cash was kept, and that no other person had access to the safe; and this for the purpose of showing the amount of cash received by him, and the amount of cash deposited by him, and for the purpose of showing the claim of the association against the guaranty company, and to show the duties of the general manager and the work he did."

Mr. Millar: "We add to that, that he collected money in the way of payment of dues for the association and receipted for them."

Mr. Snodgrass: "If your honor please, it already appearing by the by-laws offered in evidence that the duty of the general manager was to have supervision of the affairs of the association subject to the direction of the board of directors and that it was his duty to perform such detail work of the association as shall be prescribed from time to time by the board of directors, and it not appearing, and it having been stated in the presence of the court, that there are no minutes to show that the directors at any time assigned to the general manager any detail work, or any other special duties, by which alone such special duties could be shown, this offer is, therefore, inadmissible.

"And second, because the bond in question provides that the company defendant shall make good and reimburse to the employer all and any pecuniary loss sustained by the employer, of moneys, securities or other personal property in the possession of the employer, or for the possession of which he is responsible, by any act, fraud or dishonesty on the part of the said employee in connection with the duties of the office or position hereinbefore referred to, to wit: that of general manager, and it not being shown that the moneys in question came into the possession of the employee, or Ferrin, in discharge of his duties, the offer is, therefore, inadmissible."

The Court: "As we conceive it, the only way in which we can determine, if it be shown that the general manager did embezzle or appropriate to his own use, or defrauded his employer of any money or securities, is to ascertain under what circum-

stances he obtained them, and thereupon and thereafter it was determined he obtained them by fraud in connection with his office, and the offer, therefore, is for the present received, the effect of it to be determined hereafter."

Exception noted for the defendant. [1]

·The evidence received under this offer was as follows :

" Mr. Millar : Q. Now, Mr. Forney, what duties did he perform as general manager of the association? A. As general manager of the association, he had charge of all the books of the association. He had charge of all the money that was paid in to him. Q. In where? A. Into the association at the office over on North Third street, and he had charge of the bank book, made all the deposits and had charge of the safe. The only one that had the combination to the safe. Q. Now, he had charge of the cash received in the office? A. Mr. Ferrin had charge of the cash received in the office. Q. Who had· charge of the entries that were made in the books of the cash received in the office? A. Mr. Ferrin had charge of it. If it was not done by him it was done by some one under his supervision. Q. Did he have an assistant? A. He had an assistant, yes. Q. Who was he? A. Miss Woolley. Q. What position did she occupy? A. Assistant bookkeeper. Q. Who had charge of the entries in the books for moneys received other than that came to the office? A. Mr. Ferrin. Q. Then he had sole charge of all the cash received by the association? A. Yes, sir."

The court charged in part as follows :

[Now it is contended on behalf of the defendant that the loss that occurred in this case is not covered by that bond. It is said that this section 7 of the by-laws does not provide for the general manager receiving or handling money, and it is also claimed, and that is a fact, that there is another by-law which prescribes the duties of the treasurer in reference to his receiving. It says : " It shall be the duty of the treasurer to receive all moneys due the association and to keep an account of the same," with some other duties ; and on that it is contended on behalf of the defendant that the loss that occurred here, occurred not in connection with the duties of the general manager ; that they did not agree to be responsible for the dishonesty

of the general manager outside of his duties as general manager, and it is claimed that those are defined in this section 7 of article 2 of the by-laws.

You will have to determine, gentlemen, the question as to whether the loss in this case is, or is not, in whole or in part, covered by this contract; for while it is the duty of the court to construe written contracts, yet in this case the language is so general, and by its very terms, is in such a way made to depend upon statements outside of itself, that the court cannot determine the question whether the loss that occurred in this case is covered by this contract or not. The court can construe the meaning of the terms of the contract but it is for the jury in this case to apply the subject-matter of the controversy here, and determine whether it is covered by the contract or not, and you will have to determine that from all the facts in this case that bear upon the question.] [2]

[You will have to determine whether, and in connection with all the other evidence heard, the loss that has been shown to have occurred here, is covered by this contract or not; whether the parties were contracting in the first place about the loss of money at all; whether there is anything in section 7 of article 2, defining the duties of the general manager about the handling of money, whether the defendant was relying upon that as specifying and including all the duties of the general manager, or whether these statements contained in this, as to the way in which the money was handled, etc., whether that was notice to them that the plaintiffs understood, and whether it was notice from which they are assumed to have understood, that they were guaranteeing against the handling of money, it is a matter which you have to determine.] [3]

[From all that, gentlemen, as you have heard the testimony, including the by-laws and this statement, and giving all the evidence careful consideration, you will have to determine how it is, whether the loss that has been shown here is covered by this guaranty bond or not. If it is not covered by it, then the defendant is not liable. If it is, or any part of it is, then, so far as that bond is concerned, the defendant is liable, leaving, of course, the other questions in the case also to be determined; it is a matter for you.] [4]

Defendant's points among others were as follows :

2. It appearing by the by-laws of the association, plaintiff, that it was the duty of the treasurer to receive all moneys due the association and to keep an account of the same, and that it was part of the duty of the said Enos A. Ferrin as general manager to collect and disburse any moneys whatever, except by the express authority and direction of the board of directors, and no such authority or direction having been given by the board, the defendant is not responsible under its bond for any of the moneys so received and embezzled by the said Enos A. Ferrin, the same not having been received and taken into his possession in connection with the duties of his office or position as general manager, as defined by the by-laws. *Answer:* Refused. [5]

4. That if the jury believe that the duties and responsibilities of the said Enos A. Ferrin, as general manager of the association, plaintiff, were enlarged after the execution of the bond in suit, either by the board of directors or by permitting him to receive moneys, which, under the by-laws should have been paid to the treasurer, an entirely different office, with different duties and greater responsibilities, and no notice of such enlargement of duties and responsibilities was given to the defendant, it was such a variance of the terms of the bond as would relieve the defendant from all liability thereupon, and the verdict must, in such case, be for the defendant. *Answer:* That point is declined. [6]

8. That under all the evidence in the case the verdict should be for the defendant. *Answer:* That is refused. [7]

Verdict and judgment for plaintiff for $2,090. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–7) above instructions, quoting them.

*Robert Snodgrass*, with him *Frank P. Snodgrass*, for appellant.—The right to recover depended primarily upon the construction of the contract, and under the uncontradicted evidence adduced, we submit that it was for the court and not for the jury to determine whether or not the loss in question was covered by it: Hutchinson v. Woodwell, 107 Pa. 509; Tull v. Serrill, 1 W. N. C. 373.

The contract of suretyship is always strictly in favor of the surety, and it cannot be extended by implication beyond the clear and absolute terms of the undertaking. The surety is entitled to stand upon the very terms of his contract, and presumptions and equities are not allowed to change or alter the legal obligation: Northwestern Nat. Bank v. Keen, 8 W. N. C. 283 ; Wylie v. Gallagher, 46 Pa. 205; American Telegraph Co. v. Lennig, 139 Pa. 594; Shackamaxon Bank v. Yard, 150 Pa. 351; Lancaster v. Frescoln, 192 Pa. 452.

*George Kunkel*, with him *H. L. Nissley* and *Albert Millar*, for appellee.—The surety will not in general be relieved from responsibility merely because the act by his principal which occasioned the loss was not strictly in the line of the duties of his office, or was done in the course of a temporary or casual performance of other duties at the request of his employer: American Telegraph Co. v. Lennig, 139 Pa. 594: Shackamaxon Bank v. Yard, 150 Pa. 351.

OPINION BY MR. JUSTICE MESTREZAT, July 11, 1900:

This was an action of assumpsit brought to recover the penalty of a bond given by Enos A. Ferrin and the defendant as his surety to secure Ferrin's " honesty in the performance of his duties in the position " of general manager of the plaintiff association. The bond is in the penal sum of $2,000 and is dated January 6, 1898. It covers the period from January 1, 1898, to January 1, 1899. The condition of the bond is that the defendant "shall, within three months next after notice, accompanied by satisfactory proof of a loss as hereinafter mentioned, has been given to the company, make good and reimburse to the employer (the plaintiff) all and any pecuniary loss sustained by the employer, of money, securities or other personal property in the possession of the employee (Ferrin), or for the possession of which he is responsible, by any act of fraud or dishonesty, on the part of said employee, in connection with the duties of the office or position hereinbefore referred to, and occurring during the continuance of this bond, or any renewal thereof, and discovered during the said continuance, or within six months thereafter, or within six months from the death, or dismissal, or retirement of the employee from the

service of the said employer." But it is provided that the defendant "shall not be liable, by virtue of this bond, for any mere error of judgment, or injudicious exercise of discretion on the part of the said employee, in and about all, or any matters wherein he shall have been vested with discretion, either by instruction, or rules and regulations of the said employer." The plaintiff's statement avers that " between the 1st day of January, 1898, and the 15th day of April, 1898, the said Enos A. Ferrin perpetrated divers acts of fraud and dishonesty in connection with the duties of his office and position as general manager of the plaintiff company, and fraudulently appropriated to his own use and embezzled large sums of money of the goods and property of the plaintiff which he had, during the period stated, received and collected for and on account of the plaintiff by virtue of his employment and position as general manager, amounting to and aggregating the sum of $3,969.48. " The statement further avers that immediately upon the discovery of the fraud and embezzlement due notice of the same was given to the president of the defendant company and demand was made upon him for the loss sustained by reason of the defalcation.

The defense to the plaintiff's claim interposed at the trial was (1) that notice of the default of the general manager was not given to the defendant within the time required in the conditions of the bond, and (2) that the duties of the general manager had been changed and enlarged subsequently to the defendant's contract as surety, and that the loss sustained by the plaintiff did not occur while Ferrin was in the performance of his duties as general manager of the plaintiff association and is, therefore, not covered by the defendant's bond. Both questions, arising under this defense, were submitted to the jury and found in favor of the plaintiff. The latter question is raised substantially by the various assignments of error, and is the only matter for consideration here.

On the trial in the court below the application for the bond, the bond itself, and the by-laws of the plaintiff association were placed in evidence. In his application to the defendant company, Ferrin was required to "state fully the nature and duties of the position," and in pursuance thereof he set forth in his application, inter alia, as follows: " The duties of my

position are clearly set forth in section 7, article 2 of the by-laws of the association, copy of which is attached hereto. It is to be noted that my position is purely clerical in its character, no executive powers being vested in me as general manager. Itemized reports are made to the directory at each meeting of all cash received in office and disbursements are only made by them in open meeting upon orders signed by the president and secretary. Moneys received in payment of dues are deposited in bank each day and the same does not exceed $500 to $600 at any time. A complete system of credit slips are used and the books, vouchers, etc., are placed subject to inspection of directors at all times. Pennsylvania Banking Department makes periodical examination of all accounts." The correctness of the matters contained in the application are certified to by defendant's local agent and the president of the plaintiff association. The parts of the by-laws relied upon as pertinent to the present inquiry are the following sections of article 2, section 7, referred to in the application : " It shall be the duty of the general manager, subject at all times to the direction of the board of directors and in accordance with the by-laws, to have supervision of the affairs of the association. He shall perform such duties in the detail work of the association, as shall be prescribed from time to time, by the board of directors." Section 6. " It shall be the duty of the treasurer to receive all moneys due the association and to keep account of the same. He shall keep a loan fund account, a contingent fund account and an expense fund account. All moneys in the loan and contingent fund accounts shall be transferred by him to the trustee, on the last business day of each month. The money in the expense fund account shall be held by the treasurer, and paid out by him, only upon orders signed by the president and countersigned by the secretary." The treasurer is required to give security, and all moneys due the association are, by the by-laws, made payable to him. The duties of the secretary are prescribed by the by-laws, among which are that he " shall cause proper books of account and record to be kept of the business of the association ; and shall have in charge all books and papers belonging to the association (securities excepted)," and also the custody of the corporate seal.

The subject of the first assignment of error is the admission

of testimony against the defendant's objection to show the duties performed by the general manager while in the service of the plaintiff association and the amount of money received and embezzled by him in the performance of said duties. It appeared from this testimony that he had charge of the books of the association, had charge of cash received by him at the office and deposited it in bank; and that the entries in the books of the cash received were made by him or under his supervision. This was followed by testimony tending to show that Ferrin, from the organization of the association until his defalcation, produced at each meeting of the board of directors a statement, which was accepted by the board, showing the amount of money received by him and that it was in the treasurer's hands. We think the testimony covered by this assignment was admissible. It amounted simply to showing that one of the duties of the general manager, the faithful performance of which was secured by the bond, was the receipt and temporary custody of the funds of the association. This testimony in no way changed or enlarged the liability of the surety on its bond to the plaintiff nor did it show any duties or responsibilities different from those set forth in the statement of the plaintiff's president on the faith of which the bond was given, or different from those prescribed in the by-laws. That the receipt of the money of the association by the general manager was contemplated as one of his duties by the defendant when it became his surety is apparent. The application for the bond clearly discloses the fact and of this the defendant had notice before it assumed the obligation. Section 7 of article 2 of the by-laws which the application says clearly sets forth the general manager's duties, provides that "he shall have supervision of the affairs of the association" under the direction of the board of directors and "perform such duties in the detail work of the association as shall be prescribed from time to time by the board of directors." These are extensive powers, and aside from other authority to receive the funds of the association evidently contemplated by the parties, were amply sufficient to authorize the directors to confer authority on him to receive the money which he embezzled. The testimony shows that he received the money of the association and, in an itemized statement, reported it to the board of directors at each semi-monthly meeting. This action on the part of Ferrin was

approved by the board.    He had performed this duty since the
organization of the association, and hence it, by the ratification
and approval of his action in this respect, must be regarded as
one of the general manager's duties "prescribed from time to
time" by the board of directors, and a duty which the defend-
ant should have expected to be performed by him.

The second, third and fourth assignments of error relate to
portions of the general charge in which the court submitted to
the jury to determine whether the loss for which this action was
brought was covered by the contract.    It is contended by the
appellant that the action of the court in submitting this ques-
tion to the jury was erroneous, and that it was for the court,
and not for the jury, to determine whether or not the plaintiff's
loss was secured by the defendant's bond.    The learned coun-
sel for the appellant urges most strongly that the duties imposed
upon the general manager were defined in section 7, article 2 of
the by-laws, and that Ferrin had only such duties in the way of
supervision and general management of the business of the cor-
poration as were incident to that position, and that he had noth-
ing to do with the financial operations of the corporation, and
that all matters relating thereto were covered by the duties of
the treasurer.    It is claimed that the contract between the par-
ties shows such to be his duties, and that it should have been so
construed by the court, and the question as to his duties should
not have been submitted to the jury.

We cannot agree with the contention of the learned counsel.
It is true, as he suggests, that the liability of a surety is not to
be extended by implication beyond the terms of his contract and
that any material alteration therefrom may discharge the surety.
Ferrin was appointed general manager of the association, and as
such he gave the bond in suit to secure his employer against any
fraud or dishonesty in the performance of the duties of his posi-
tion.    But what were those duties?    They were not specifically
defined in the contract itself so that the court could, as a matter
of law, ascertain and determine them.    This became the duty
of the jury under the evidence in the case.    In the application
on which the security was obtained, Ferrin was required to
"state fully the nature and duties of the position."    In com-
plying with this requirement, he states that his duties are clearly
set forth in section 7, article 2 of the by-laws, but he follows

this with the statement that his position is "purely clerical" and that he had no executive powers; that "itemized reports are to be made to the directory at each meeting of all cash received in the office, and disbursements are only to be made by them in open meeting upon orders signed by the president and secretary;" that "moneys received in payment of dues are deposited in bank each day;" that "a complete system of credit slips are used and the books, vouchers, etc., are placed subject to inspection of the directors at all times," and that the "Pennsylvania Banking Department makes periodical examination of all accounts." Ferrin's employer, the plaintiff, by its president, on December 29, 1897, certified that the statements are correct and that "when last examined on the 11th of May last, and in process now, 1897, his accounts were found in every respect correct." Upon the faith of this "statement in writing relative to the duties, responsibilities and checks to be used upon the employee in said position," the defendant entered into this contract and agreed to reimburse the plaintiff for any pecuniary loss it might sustain by reason of the fraud or dishonesty of the general manager. From the parol testimony in the case, it appears that apart from any duties prescribed by the board of directors under section 7, article 2 of the by-laws, Ferrin transacted the business required to be performed in this statement. He was not authorized to perform executive duties. He received the moneys due the association at the office and made itemized statements of the cash so received to the directors at each meeting. Making the "itemized reports" to the directors, mentioned in the application, is not specifically prescribed by the by-laws as the duty of any official of the corporation. The "checks to be used upon the employee" were set forth in the statement and consisted of the system of credit slips, inspection of books by the directors and the examination of accounts by the Pennsylvania Banking Department. The other matters contained in the statement were evidently duties to be performed by the employee. When the bond was given, both the plaintiff and the defendant knew the contents of this statement, and, as we have seen, contracted with special reference to it. It was therefore strong and convincing evidence for the jury on the question as to what the parties understood the duties of Ferrin to be under his appointment as general

manager. The whole evidence submitted fully justified the finding of the jury that it was the duty of the general manager, as understood by both parties to the contract, to receive the money, which, by Ferrin's fraud and dishonesty, the plaintiff lost.

It is contended, however, that under the by-laws all the financial operations of the plaintiff association were to be transacted by the treasurer, and that upon him alone was devolved the duty of receiving and accounting for the money of the association. Under the evidence, it appears that the treasurer did receive some money direct from the parties from whom it was due, but·most of the money due the association was received by Ferrin, whose statements to the directors showed the amount received and that it was in the hands of the treasurer. But while such duties were imposed on the treasurer, it does not necessarily follow that the parties in their contract did not contemplate the temporary handling of the money by the general manager. As we have said, there was evidence amply sufficient to justify the jury in finding that such was their understanding. The issue in this controversy did not involve a determination of the duties of the treasurer, but only the right of Ferrin while discharging the duties of general manager to receive and account for the money of the association which he embezzled. This question was for the jury and its finding is conclusive of the fact.

The fifth assignment alleges error in the answer of the court to the defendant's second point for charge. This point assumes as a fact that it was not the duty of Ferrin as general manager to handle the moneys of the plaintiff, and on this assumption, requests the court to say to the jury that the defendant was not responsible on its bond for the money received and embezzled by Ferrin. The practical effect of an affirmance of this point would have been to withdraw the case from the jury and for the court to have determined as a fact what, as we hold, was a question for the determination of the jury under all the evidence in the case. This would have been error.

The matter complained of in the sixth assignment was the refusal to affirm the defendant's fourth point for charge. This point requested the court to charge that if the jury believe that the duties and responsibilities of Ferrin, as general manager,

were enlarged after the execution of the bond by permitting
him to receive moneys which, under the by-laws, should have
been paid to the treasurer, an entirely different office, with dif-
ferent duties and greater responsibilities, and no notice of such
enlargement of duties and responsibilities was given the de-
fendant, it was such a variance of the terms of the bond as
would discharge the defendant from liability on its contract.
The learned court below very properly, as we think, submitted
to the jury to determine whether the receipt of the money of
the association was part of the duties of the general manager as
understood by the parties when the defendant entered into the
contract of suretyship, with the instruction that if it was, the
plaintiff could recover, but if it was not, there could be no re-
covery.  The practical effect of the defendant's request in the
point under consideration was that if subsequent to the execu-
tion of the bond, other duties were imposed upon Ferrin than
those contemplated in his contract, the defendant was not re-
sponsible for his defalcation regardless of the question whether
the money was embezzled while Ferrin was in the discharge of
such additional duties.  But if the moneys embezzled were re-
ceived by him under the appointment and in pursuance of his
duties, the faithful performance of which were secured by the
bond, the mere fact of the imposition upon him of other and
greater duties and responsibilites, in no way interfering with
or modifying those imposed by his original appointment, would
not discharge the surety.  As said by Mr. Justice WILLIAMS in
Shackamaxon Bank v. Yard, 150 Pa. 358, " The duties of the
new office must be such as to interfere with or modify the old.
If they are not, the sureties cannot complain.  It is not enough
that some change in the work of the appointee, the principal, has
been made.  It must also appear that the change was such as
to interfere with or modify the duties for the faithful perform-
ance of which the sureties are bound, so as to make it inequi-
table to enforce their undertaking upon a state of facts not
within the contemplation of the parties when it was made."
The language of the point was not broad enough to justify the
court in affirming it, and hence, it was properly refused.

The defendant by its eighth point, which is the subject of the
last assignment, asks the court to give binding instructions to
the jury to find for the defendant.  Our conclusions in refer-

ence to the fifth and sixth assignments of error justified the court in refusing this point.

The assignments of error are overruled and the judgment is affirmed.